ZELLER & WIELICZKO, LLP
Attorneys for Defendants,
Albert Clements, Michael Kernan,
Robert L. Carrara,
and Borough of Berlin ("Berlin Defendants")

Woodcrest Pavilion
Ten Melrose Avenue, Suite 400
Cherry Hill, New Jersey 08003
Phone:  856-428-6600

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| JOHN KLEINBERG | : | |
| | : | No. 1:09-cv-04924-NLH-JS |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action |
| | : | |
| ALBERT CLEMENTS, EDMOND SHIELDS, | : | |
| MICHAEL KERNAN, MILLARD | : | |
| WILKINSON, BERLIN BOROUGH, | : | |
| BERLIN BOROUGH POLICE DEPARTMENT, | : | |
| ROBERT L. CARRARA, CAMDEN COUNTY, | : | |
| and JOHN DOES 1-10, | : | |
| | : | |
| Defendants, | : | |
| _____ | : | |

_____

**THE BERLIN DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT**
_____

**On the Brief:**                          **Oral Argument Requested**
**Matthew B. Wieliczko, Esquire**

# TABLE OF CONTENTS

I.   <u>TABLE OF AUTHORITIES</u> . . . . . . . . . . . . . . . . . . . iii

II.  <u>THE UNDISPUTED MATERIAL FACTS</u> . . . . . . . . . . . . . . 1

III. <u>LEGAL ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . 1

    A. PLAINTIFF JOHN KLEINBERG HAS AGREED TO DISMISS,
       WITH PREJUDICE, ALL CLAIMS AGAINST DEFENDANTS
       BERLIN BOROUGH AND ROBERT L. CARRAR . . . . . . . . . . .1

    B. PLAINTIFF HAS FAILED TO IDENTIFY ANY GENUINE
       ISSUES OF MATERIAL FACT SUFFICIENT TO DEFEAT
       THE BERLIN DEFENDANTS' MOTION FOR SUMMARY
       JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . .1

         1. Plaintiff Cannot Create a Genuine Issue
           of Material Fact by Providing
           Contradictory Deposition Testimony . . . . . . . . . . .1

         2. Plaintiff Cannot Create a Genuine Issue
           of Material Fact Through Speculation or
           Conclusory Allegations . . . . . . . . . . . . . . . . .2

    C. THE DEFENDANT OFFICERS ARE ENTITLED TO
       QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . .5

         1. The Defendant Officers Possessed a
           Reasonable Belief that Plaintiff Was
           Going to Cause Imminent Harm to Himself . . . . . . . . .5

         2. The Defendant Officers Acted Reasonably
           Under the Circumstances . . . . . . . . . . . . . . . . .8

    D. PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS MUST
       FAIL AS A MATTER OF LAW . . . . . . . . . . . . . . . . .11

    E. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES MUST BE
       DISMISSED AS A MATTER OF LAW . . . . . . . . . . . . . .11

IV.  <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . .12

# TABLE OF AUTHORITIES

**A. CASES**

Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999) .................8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . 2,3

Baer v. Chase, 392 F.3d 609 (3d Cir. 2004) ...................1

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............3

Cleveland v. Policy Management Systems Corp.,
526 U.S. 795 (1999) .........................................1

Estate of Smith v. Marasco, 318 F.3d 497
(3d Cir. 2003) .............................................9

Graham v. Connor, 490 U.S. 386 (1989) .......................9

Jiminez v. All American Rathskeller, Inc.,
503 F.3d 247 (3d Cir. 2007) ................................1

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) ........................................3

Mincey v. Arizona, 437 U.S. 385 (1978) ......................5

Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991) .........3

Parkhurst v. Trapp, 77 F.3d 707 (3rd Cir 1996) ..............6

Scott v. Harris, 550 U.S. 372 (2007) ........................3

Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997)) ............9

Smith v. Wade, 461 U.S. 30 (1983) ..........................12

Wayne v. United States, 318 F.2d 205 (C.A.D.C. 1963) ........6

Wheeler v. City of Philadelphia, 367 F. Supp.2d
(E.D. Pa. 2005) ............................................9

**B. STATUTES**

42 U.S.C. § 1983............................................11

**C. RULES**

Fed. R. Civ. P. 56(e) .......................................2

## II. <u>THE UNDISPUTED MATERIAL FACTS</u>

The Berlin Defendants rely upon the submitted Response to Plaintiff's Opposition to Defendants' Statement of Material Facts (hereinafter "BDRSMF") and Counter-Statement to Plaintiff's Statement Material Facts (hereinafter "BDCSMF").

## III. <u>LEGAL ARGUMENT</u>

**A. PLAINTIFF JOHN KLEINBERG HAS AGREED TO DISMISS, WITH PREJUDICE, ALL CLAIMS AGAINST DEFENDANTS BERLIN BOROUGH AND ROBERT L. CARRARA.**

The Berlin Defendants acknowledge Plaintiff's agreement to dismiss, with prejudice, all claims against Defendants Berlin Borough and Robert L. Carrara.

**B. PLAINTIFF HAS FAILED TO IDENTIFY ANY GENUINE ISSUES OF MATERIAL FACT SUFFICIENT TO DEFEAT THE BERLIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

**1. Plaintiff Cannot Create a Genuine Issue of Material Fact by Providing Contradictory Deposition Testimony.**

A party cannot create a genuine issue of fact sufficient to survive a motion for summary judgment simply by contradicting his or her own prior statements and representations. See Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999). When a party does not explain the contradiction between the conflicting testimonies, the alleged factual issue in dispute can be perceived as a "sham," thereby not creating an impediment to a grant of summary judgment. See Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004); see also Jiminez v. All American Rathskeller, Inc., 503 F.3d 247 (3d Cir. 2007) (discussing

"sham affidavit" doctrine, which requires summary judgment where affidavit contains a contraction of earlier deposition testimony).

Specifically, regarding his allegation of excessive force, Plaintiff at one point testified that the Defendant Officers punched and kneed him in the lower back while he was face-down on the floor. See BDRSMF at ¶26. However, Plaintiff initially testified that, while taking custody of Plaintiff, none of the Defendant Officers sprayed him with mace, hit him with any objects, or kicked him. See BDRSMF at ¶26. Other than tackling Plaintiff and handcuffing him, the Defendant Officers "just escorted [him] out to the ambulance, nothing abusive" and had "no contact at all" with Plaintiff. See BDRSMF at ¶26. Plaintiff later reiterated that tackling him on the kitchen floor was "the only physical contact they had with [him]" and "[j]ust putting him on the stretcher, nothing else." See BDRSMF at ¶26. Plaintiff cannot defeat summary judgment by using his own contradictory statements to attempt to create a genuine issue of material fact regarding the alleged excessive force of the Defendant Officers. Plaintiff's unexplained inconsistent testimony on this issue is a "sham" and insufficient to defeat the summary judgment motion.

## 2. Plaintiff Cannot Create a Genuine Issue of Material Fact Through Speculation or Conclusory Allegations.

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat

an otherwise properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991) (noting that a motion for summary judgment is not defeated by mere allegations, general denials, or other "vague statements").  Further, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

     Apart from his contradictory deposition testimony, Plaintiff apparently bases his claims, in part, upon photographs of his alleged injuries taken by his father, Karl Kleinberg.  Significantly, these photographs are undated.  See BDCSMF at ¶22-23.  In addition, the Plaintiff's father testified that he did not remember when he first learned of the subject incident, only recalling that he went to Plaintiff's residence to take photographs of Plaintiff's alleged injuries when he was informed of the incident.  See BDCSMF at ¶22-23. Plaintiff's father admitted that Plaintiff may not have told him about

the incident until days or even weeks after it had occurred.  See BDCSMF at ¶22-23. No one knows when these photographs were taken.

Further, while Plaintiff attempts to rely upon medical records documenting his treatment with Virtua Health and Rehabilitation Center in which he asserts that he was "assaulted by the police," he did not report to the emergency room for alleged rib and left should pain until October 1, 2008, more than three (3) weeks after the subject incident occurred.  See BDCSMF at ¶14.  Likewise, at no point during his hospitalization directly following the incident, from his admission until his discharge on September 10, 2008, did Plaintiff report to medical personnel that he was experiencing rib pain or that his injuries were due to physical contact by the Defendant Officers.  See BDCSMF at ¶14.  Rather, Plaintiff only expressed upper back pain, which he admitted he had experienced for years.  See BDCSMF at ¶14.  Plaintiff's records also do not indicate that any bruising existed on Plaintiff's body upon examination, and he did not ever inform anyone at the hospital of this information.  See BDCSMF at ¶14.

Plaintiff resorts to pure speculation to maintain his contention that the Defendant Officers acted unreasonably towards Plaintiff.  Specifically, in his Opposition to the Berlin Defendants' Motion for Summary Judgment, Plaintiff makes the entirely unsupported allegation that "[a] jury could very easily draw an inference that [Plaintiff's] act of shutting the door on the conversation infuriated the Police Officer Defendants, who proceeded to storm Kleinberg's house to beat him, cuff him and teach him a lesson about being rude to the police." See Plaintiff's Opposition to the Berlin Defendants' Motion for

Summary Judgment, dated July 5, 2011, at pg. 19.  Yet, Plaintiff testified that it was reasonable for the Defendant Officers, based upon the information available to them at the time of the incident, to have a genuine belief that Plaintiff was serious about taking his own life, and there was nothing improper about the Defendant Officers attempting to intervene.  <u>See</u> BDCSMF at ¶30.

Accordingly, Plaintiff fails to meet the evidentiary standard required to defeat a motion for summary judgment.  Even if determined to be competent evidence under the Fed. R. of Evidence, which the Defendants contest, the medical records and photographs relied upon by Plaintiff, when viewed in the light most favorable to him, at most only evidence that he experienced alleged back pain after the subject incident and had alleged bruises on an unknown date, though not immediately after the incident while hospitalized.  Plaintiff proffers no causal proof as to when this alleged bruising was present.  Because Plaintiff resorts to speculation and conclusory allegations to support his claims, summary judgment is warranted.

**C. THE DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY.**

**1. The Defendant Officers Possessed a Reasonable Belief that Plaintiff Was Going to Cause Imminent Harm to Himself.**

As detailed in Defendants' initial submission, as well as Plaintiff's Opposition to Defendants' Motion for Summary Judgment, a warrantless entry by a police officer is not barred by the Fourth Amendment when the officer reasonably believes that a person is in need of immediate aid.  <u>Mincey v. Arizona</u>, 437 U.S. 385, 392 (1978).  Significantly, "'[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal

absent an exigency or emergency.'" <u>Id</u>. (quoting <u>Wayne v. United</u>
<u>States</u>, 318 F.2d 205, 212 (C.A.D.C. 1963).  The concern for a person's
safety is a valid form of exigent circumstances.  <u>Parkhurst v. Trapp</u>,
77 F.3d 707, 711 (3rd Cir 1996).

        In this matter, the Defendant Officers reasonably believed that
Plaintiff created imminent danger to himself, based on the information
available to them at the time of the incident.  Significantly, on
September 8, 2008, the Defendant Officers were contacted by Darren
Lomonaco, an officer with the Collingswood Police Department, who
reported that Plaintiff had repeatedly asked Officer Lomonaco to shoot
him in the head.  <u>See</u> BDRSMF at ¶11-18.  Officer Lomonaco also
indicated that his wife, Elvira Lomonaco, informed him that Plaintiff
had previously asked her for one of Officer Lomonaco's firearms so
that he could shoot himself in the head.  <u>See</u> BDRSMF at ¶11-18.
Officer Lomonaco subsequently executed a Statement of Witness or
Complaintant detailing the same.  <u>See</u> BDRSMF at ¶11-18.  Further,
Plaintiff testified that the Defendant Officers had no reason to doubt
Officer Lomonaco's statement that Plaintiff intended to kill himself.
<u>See</u> BDRSMF at ¶23.  In fact, Plaintiff admitted that it was reasonable
for the Defendant Officers, based upon the information available to
them, to have a genuine belief that Plaintiff was serious about taking
his own life, and there was nothing improper about the Defendant
Officers attempting to intervene.  <u>See</u> BDRSMF at ¶30.

        Moreover, Plaintiff's conduct when the Defendant Officers
approached Plaintiff's residence and knocked on his door did not alter
their reasonable belief that Plaintiff was a danger to himself.

Significantly, Officer Clements advised Plaintiff that they wanted to speak to him and asked him to step outside, and he responded "fuck, no" and slammed the door on the Defendant Officers.  See BDRSMF at ¶26.  Plaintiff also acknowledged that, on two occasions, the Defendant Officers asked him to step outside so that they could speak to him, and he refused and closed and locked the door.  See BDRSMF at ¶26.  Further, Craig Rini testified that he heard the Defendant Officers ask Plaintiff to come out of the house, then told them to go away because he wasn't coming out and closed the door on them.  See BDRSMF at ¶26.  After Plaintiff closed the front door on the Defendant Officers, they could not see into the residence because the shades were drawn.  See BDCSMF at ¶21.

Noticing a door in Plaintiff's garage was ajar, the Defendant Officers approached it, identified themselves and informed Plaintiff that they "need[ed] to check for [his] safety."  See BDRSMF at ¶26.  Plaintiff then attempted to force the door shut and told the Defendant Officers to "fuck off."  See BDRSMF at ¶26.  The Defendant Officers were then able to open the door and observed Plaintiff holding an unidentified object in his hand.  See BDRSMF at ¶26.  Upon seeing an object in Plaintiff's hand, the Defendant Officers entered the residence and controlled Plaintiff's hand, determining that the object Plaintiff was holding was a telephone.  See BDRSMF at ¶26.

In addition, the Defendant Officers' belief that Plaintiff was an imminent danger to himself was reasonable.  Plaintiff has admitted that it was reasonable.  Pursuant to Borough of Berlin policy, officers have a duty and responsibility to transport an individual for

a mental health assessment by licensed professionals upon deeming a threat legitimate, not to make a judgment determination as to the likelihood that an individual will act upon his or her statement. <u>See</u> BDRSMF at ¶41. Here, Officer Clements concluded that Plaintiff's threat to kill himself was credible because he was informed of Plaintiff's repeated statements by Officer Lomonaco, a uniformed police officer. <u>See</u> BDRSMF at ¶41. Upon being taken into custody, Plaintiff confirmed that he made such statements about wanting to commit suicide, as he testified that, after the Defendant Officers handcuffed him and sat him on the sofa, he said, "[Y]eah, I made that comment" but told the officers it was intended to be a joke. <u>See</u> BDCSMF at ¶18. Accordingly, because the Defendant Officers possessed a reasonable belief that Plaintiff was in imminent danger of harming himself, their search and seizure was conducted lawfully under the emergency aid and exigent exceptions, and, therefore, summary judgment must be granted in their favor.

**2. The Defendant Officers Acted Reasonably Under the Circumstances.**

Also detailed in Defendants' initial submission and Plaintiff's Opposition to the Berlin Defendants' Motion for Summary Judgment, "[t]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." <u>Abraham v. Raso</u>, 183 F.3d 279, 288 (3d Cir. 1999). "The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, 'the officer's actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying

intent or motivations.'" Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  Courts should consider eight factors to determine reasonableness:  (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether he actively is resisting arrest or attempting to evade arrest by flight, (4) the possibility the persons subject to the police action are themselves violent and dangerous, (5) the duration of the action, (6) whether the action takes place in the context of effecting an arrest, (7) the possibility that the suspect may be armed, and (8) the number of persons with whom the police officers must contend at one time.  See Wheeler v. City of Philadelphia, 367 F. Supp.2d 737 (E.D. Pa. 2005) (citing Graham, 490 U.S. at 396-7 and Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

In this matter, Officer Clements testified that the Defendant Officers decided to enter Plaintiff's residence due to Plaintiff's threats to commit suicide in order to transport him to a hospital for treatment and evaluation.  See BDRSMF at ¶41.  At that time, the Defendant Officers did not know whether Plaintiff was armed.  See BDCSMF at ¶21.  Officer Clements further testified that he did not know with certainty what he was dealing with and that there are other methods of committing suicide other than by using a firearm.  See BDCSMF at ¶24.  Likewise, Sergeant Shields stated that the Defendant Officers did not know at the time of the incident whether Plaintiff owned any firearms or had access to other weapons that could be used to commit suicide.  See BDCSMF at ¶21.  Plaintiff also testified that

he was unsure whether Officer Lomonaco knew whether he owned a firearm.  See BDCSMF at ¶21.  Further, upon opening the door that led into Plaintiff's home, the Defendant Officers observed that Plaintiff was holding an unknown object in his hand, which they believed could have been a weapon.  See BDRSMF at ¶26.

Plaintiff testified that, upon entering Plaintiff's residence, none of the Defendant Officers sprayed him with mace, hit him with any objects, or kicked him.  See BDRSMF at ¶26.  Other than tackling Plaintiff and handcuffing him, the Defendant Officers "just escorted [him] out to the ambulance, nothing abusive" and had "no contact at all" with Plaintiff.  See BDRSMF at ¶26.  Plaintiff later reiterated that tackling him on the kitchen floor was "the only physical contact they had with [him]" and "[j]ust putting him on the stretcher, nothing else."  See BDRSMF at ¶26.

Plaintiff admitted that the Defendant Officers had no reason to doubt Officer Lomonaco's statement that Plaintiff intended to kill himself.  See BDRSMF at ¶20.  Plaintiff also acknowledged that it was reasonable for the Defendant Officers, based upon the information available to them at the time of the incident, to have a genuine belief that Plaintiff was serious about taking his own life, and there was nothing improper about the Defendant Officers attempting to intervene.  See BDRSMF at ¶30.

Therefore, because the Defendant Officers: (1) received a credible statement that Plaintiff was an immediate threat to his own safety, (2) were uncertain whether Plaintiff was in possession of a weapon and observed an object in his hand, and (3) effectuated an

arrest on Plaintiff for the purpose of transporting him for a mental
health screening, they acted reasonably under the circumstances by
only utilizing routine or procedural contact on him, in accordance
with Berlin Borough Policy.  Plaintiff has conceded that the Defendant
officers acted reasonably.  As such, summary judgment must be granted
in favor of the Defendant Officers.

> **D. PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS MUST FAIL AS A MATTER OF
> LAW.**

The thrust of Plaintiff's state constitutional claims are of the
same or of a similar nature as his federal claims pursuant to 42
U.S.C. §1983.  As argued above, the Defendant Officers acted within
the scope of their authority when they entered Plaintiff's residence
without a warrant to prevent him from killing himself, took custody of
Plaintiff, and transported him to the hospital for a mental health
assessment and treatment.  Upon his arrest, Plaintiff admitted to the
Defendant Officers that he stated that he intended to kill himself.
Plaintiff also testified that the Defendant Officers acted reasonably
in believing that the threat was credible and utilized no force
against him in taking him into custody.  See BDRSMF at ¶26.  Based on
the foregoing, and for all reasons expressed above, Plaintiff's state
constitutional rights were not violated, and the Berlin Defendants are
entitled to summary judgment on this issue.

> **E. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED AS A
> MATTER OF LAW.**

As indicated in Defendant's initial submission, as well as
Plaintiff's Opposition to the Berlin Defendants' Motion for Summary
Judgment, punitive damages against individual police officers may only

be imposed where an officer's conduct is shown to be motivated by an "evil motive or intent" or when it rises to the level of "reckless or callous indifference" to the plaintiff's protected rights.  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  Neither simple negligence nor even gross negligence can support an award of punitive damages.  <u>Enright v. Lubrow</u>, 202 N.J. Super. 58, 76 (App. Div. 1985).  As set forth at length above, the Defendant Officers were not in any way motivated by evil intent or motive nor were they recklessly or callously indifferent to the rights of the Plaintiff.  Plaintiff admitted that the Defendant Officers had no reason to doubt Officer Lomonaco's statement that Plaintiff intended to kill himself.  <u>See</u> BDRSMF at ¶20.  Plaintiff also acknowledged that it was reasonable for the Defendant Officers, based upon the information available to them at the time of the incident, to have a genuine belief that Plaintiff was serious about taking his own life, and there was nothing improper about the Defendant Officers attempting to intervene.  <u>See</u> BDRSMF at ¶30.  For these reasons, Plaintiff's demand for punitive damages must be dismissed as a matter of law.

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, the Berlin Defendants respectfully request the entry of summary judgment in their favor, dismissing all of the Plaintiff's claims, with prejudice.

DATED:  July 18, 2011                    Respectfully Submitted,

                                         ZELLER & WIELICZKO, LLP
                                         Attorneys for the
                                         Berlin Defendants,

                                 By:  _____
                                         MATTHEW B. WIELICZKO, Esquire