**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
_____
                               :
JOHN KLEINBERG,                :
                               :        Civil Action No.
            Plaintiff,         :        09-4924 (NLH)
                               :
     v.                        :
                               :
ALBERT CLEMENTS, et al.,       :        OPINION
                               :
            Defendants.        :
_____:
```

**APPEARANCES:**
MATTHEW BENJAMIN WEISBERG
PROCHNIAK WEISBERG, PC
7 SOUTH MORTON AVENUE
MORTON, PA 19070
*Attorney for Plaintiff*

MATTHEW B. WIELICZKO
JOHN M. BORELLI
ZELLER & WIELICZKO, LLP
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 400
CHERRY HILL, NJ 08003-3647
*Attorney for defendants and cross defendants Albert Clements,*
*Michael Kernan, Berlin Borough, and Robert Carrara*

FRANCIS X. DONNELLY
MAYFIELD, TURNER, OMARA, DONNELLY & MCBRIDE, PC
2201 ROUTE 38
SUITE 300
CHERRY HILL, NJ 08002
*Attorney for defendant and cross defendant Edmond Shields*

**HILLMAN, District Judge**

  Before the Court are defendants' motions for summary

judgment,[1] and plaintiff's motion to file a sur-reply.  For

---

  [1] Defendants Albert Clements, Michael Kernan, Berlin
Borough and Robert Carrara filed a motion for summary judgment.
Defendant Edmond Shields filed a separate motion for summary
judgment that joined Clements and Kernan's motion.

reasons set forth below, defendants' motions will be granted in part and denied in part.  Plaintiff's motion will be denied.

## I.   <u>JURISDICTION</u>

Plaintiff has alleged that defendants violated his rights under the First, Fourth and Fourteenth Amendments and, therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## II.   <u>BACKGROUND</u>

### A.  Factual Background

On September 8, 2009, plaintiff John Kleinberg was alone at his house drinking beer.  Between 1:00 p.m. and 2:00 p.m., he went outside and approached his next door neighbor, Elvira Lomonaco.  Mrs. Lomonaco testified that plaintiff was staggering and that his speech was slurred.  Although plaintiff admits he was drinking alcohol, he denies that he was staggering or slurring his speech because, as an alcoholic, he has a high tolerance for alcohol.  Plaintiff describes the encounter as "neighborly small talk."  Mrs. Lomonaco describes a different conversation.  She testified that Plaintiff asked her three times to retrieve her husband's guns because he wanted to kill himself.  Plaintiff eventually returned to his home.

By 6:00 p.m., plaintiff had consumed approximately twelve beers.  At that time, he left his home again and approached Darren Lomonaco, a police officer and Elvria

2

Lomonaco's husband, and asked if he could borrow his gun to put
himself "out his misery."  Plaintiff does not deny the
conversation but says that not only was he joking when he made
this statement but that Officer Lomonaco knew he was joking.
Officer Lomonaco, on the other hand, testified that plaintiff
became more assertive and insistent and went so far as to ask
Officer Lomonaco several times to shoot him.  Plaintiff then went
back inside the house and consumed approximately five or six more
beers.

     Officer Lomonaco then spoke with his wife about the
incident and she told him that plaintiff had also told her that
he wanted Officer Lomonaco's guns to shoot himself.  Based on his
conversations with plaintiff and with his wife, Officer Lomonaco
contacted the Berlin Police Department to make them aware of
plaintiff's behavior and apparent desire to kill himself.

     Defendant Officer Albert Clements responded to the
call.  He spoke with Officer Lomonaco who advised him of his
conversation with the Plaintiff and some aspects of his wife's
encounter and conversation with plaintiff.[2]  Officer Clements,

_____

     [2]     Mrs. Lomonaco also testified that plaintiff made
unwanted sexual advances towards her, including physical
touching, and tried to force her into her home.  Officer Clement
testified that Darren Lomonaco told him that there was a "sexual
conversation from Mr. Kleinberg to his wife."  Plaintiff denies
such behavior.  Since defendants do not rely on any alleged
inappropriate sexual or assaultive behavior by plaintiff in
defending their decision to enter plaintiff's house and arrest
him, those statements are not considered here for purposes of

joined by other officers, proceeded to plaintiff's residence and knocked on the door.

Here, once again, the parties differ somewhat as to details.  Officer Clements testified that when Plaintiff came to the door he asked him to come outside to speak to him, plaintiff replied with a definitive "fuck, no" and "slammed the door shut on us."  Although he could not smell alcohol because of a glass door between them, Clements described plaintiff as visibly intoxicated.

Plaintiff describes a somewhat more benign encounter. He says he asked the officers twice what they wanted and when he received no response told them "to go and leave him alone."  He then closed and locked his front door and went back to watching television and speaking on the telephone to his friend Craig Rini.

After failing to get plaintiff outside at the front door, defendant Officer Clements, Officer Edmond Shields and Officer Michael Kernan walked into plaintiff's garage, which was open, and proceeded towards a door at the back of the garage that led inside into a laundry/mud room.  Plaintiff says the door was closed.  Defendants say it was ajar.  The defendant officers entered the house and started to go through a second closed door between the laundry room and the kitchen.  Plaintiff states that

---

analyzing the qualified immunity defense.

4

he attempted to barricade the door to the kitchen to prevent the officers from entering, but that the officers shoved the door open, tackled him to ground, and put him in handcuffs.  Although his testimony has differed at times, Plaintiff now says that defendants also punched him and kneed him in the back while arresting him.  Plaintiff states as a result of defendants' use of excessive force, he suffered bruising on his torso and arm and broken ribs.

The defendant officers state that they entered the house due to an "elevated" concern for the plaintiff's safety and because of the statements of their fellow police officer and his wife, also plaintiff's neighbors, that he wanted to commit suicide.  The defendant officers did not have a warrant to enter plaintiff's home.  Clements testified that he was familiar with previous calls to the police involving plaintiff and that each time plaintiff was intoxicated.  Clements states that upon entering the home he observed an unknown object in plaintiff's hand and that after he "controlled" plaintiff's hand, he realized that plaintiff was holding a telephone.  Defendants state that plaintiff was handcuffed and an ambulance was called.  Clements testified that an ambulance is standard procedure for "suicide-type calls."  There is no allegation or evidence that defendants used excessive force after placing plaintiff in handcuffs.

Plaintiff was put into the ambulance and taken to the

hospital.  He was treated for back pain and admitted for alcohol withdrawal symptoms.  A suicide risk assessment was performed. Almost a month later, on October 2, 2008, plaintiff was seen at the emergency room at Virtua Hospital where x-rays revealed two rib fractures on his left side.

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983[3] alleging that defendants Clements, Shields and Kernan violated his rights under the First, Fourth and Fourteenth Amendments of the United States Constitution, as well as corresponding provisions New Jersey Constitution.[4]  Defendants

---

[3]    Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

See 42 U.S.C.A. § 1983.

[4]    Because the analysis of claims under state constitutional law is similar to the analysis under the Fourth Amendment, no separate analysis will be undertaken for plaintiff's claims arising under the New Jersey Constitution. See Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (granting defendants' motion for summary judgment on plaintiffs' claims under Article I, paragraph of the New Jersey Constitution, because it was already established that there was no federal constitutional violation) (citing Desilets v. Clearview Regional Bd. of Educ., 265 N.J.Super. 370, 627 A.2d 667, 673 (App.Div. 1993) ("We are not persuaded that the New Jersey Constitution provides greater protection under the circumstances of this case than its federal counterpart.  We note that in its T.L.O. opinion the New Jersey Supreme Court analyzed the search and seizure issue under the Fourth Amendment to the United States Constitution, and did not suggest that New Jersey's organic law

6

move for summary judgment.  For reasons explained below, their motion is granted in part and denied in part.

### III.  DISCUSSION

#### A.   Defendants Berlin Borough and Robert L. Carrarra

As an initial matter, plaintiff voluntarily withdraws, with prejudice, all claims against defendants Berlin Borough and Robert L. Carrarra.  Therefore, defendants' motions for summary judgment will be granted as to these defendants and they will be dismissed from this matter.[5]

#### B.   Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the

---

imposed more stringent standards.")).

[5]      Berlin Borough and Robert L. Carrarra are dismissed by plaintiff as defendants.  The Court notes that they are also cross defendants in this matter and, therefore, would also have to be dismissed as cross defendants if they are to be dismissed completely from this matter.

nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

Plaintiff brought claims pursuant to §1983 alleging

8

that defendant violated his civil rights.  Defendants argue that plaintiff's civil rights claims under the U.S. Constitution are barred by qualified immunity.

### 1.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson, 129 S.Ct. at 815 (2009).  This doctrine provides a government official immunity from suit rather than a mere defense from liability. Id.  A Court must undertake a two-step inquiry to determine the applicability of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Montanez, 603 F.3d at 250 (citations omitted).  "Where a
defendant asserts a qualified immunity defense in a motion for
summary judgment, the plaintiff bears the initial burden of
showing that the defendant's conduct violated some clearly
established statutory or constitutional right."  Sherwood v.
Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the
plaintiff carries this initial burden must the defendant then
demonstrate that no genuine issue of material fact remains as to
the 'objective reasonableness' of the defendant's belief in the
lawfulness of his actions."  Id. (citing Albright v. Rodriguez,
51 F.3d 1531, 1535 (10th Cir. 1995)).

          In determining whether a defendant is entitled to
qualified immunity, the court is "permitted to exercise their
sound discretion in deciding which of the two prongs of the
qualified immunity analysis should be addressed first in light of
the circumstances in the particular case at hand."  Pearson, 129
S.Ct. at 818.  If the answer to either question is "no," the
analysis may end there.  See id. at 823 (finding that because the
unlawfulness of the officers' conduct was not clearly
established, the officers were entitled to qualified immunity,
without having to answer the question of whether the officers
violated the plaintiff's constitutional rights).  Whether an
officer made a reasonable mistake of law and is thus entitled to
qualified immunity is a question of law that is properly answered

by the Court.  See Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007).

Defendants argue that they are entitled to qualified immunity.  In response, plaintiff argues that genuine issues of material fact preclude the court from engaging the issue of qualified immunity on his claims arising under the Fourth Amendment.[6]

### 2.  Fourth Amendment

The Fourth Amendment, made applicable to the States by

---

[6]    Plaintiff also brought a First Amendment retaliation claim for an internal affairs complaint that he filed against the Berlin Borough Police Department ("BBPD") about week before they arrested him.  Plaintiff states that he filed the complaint against the BBPD for alleged failures to enforce a custody order which permitted plaintiff to visit with his son.  Defendants have not moved for summary judgment on the First Amendment claim. Plaintiff also recounted the events of a 1995 DUI arrest and conviction, and also stated that defendants "interfered with his parental rights."  The Court assumes that plaintiff only intends to recite these facts in support of his claims properly before the Court, and does not intend to raise separate state law claims since the facts alleged by plaintiff concerning his 1995 DUI conviction and underlying custody arrangements are not "so related" as to form the same "case or controversy."  It does not appear that this Court would not be able to exercise supplemental jurisdiction over any separate claim based on these facts.  See 28 U.S.C.A. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387, 118 S.Ct. 2047, 2051 (1998) ("Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'").

way of the Fourteenth Amendment, <u>Mapp v. Ohio</u>, 367 U.S. 643, 81
S.Ct. 1684, 6 L.Ed.2d 1081 (1961), guarantees "[t]he right of the
people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures."  Plaintiff
responds that defendants entered his home without a warrant, used
excessive force, and falsely arrested him in violation of his
Fourth Amendment rights.  We address each allegation separately
below.

### a).  Warrantless Search

"Searches and seizures inside a home without a warrant
are presumptively unreasonable."  <u>Groh v. Ramirez</u>, 540 U.S. 551,
559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).  However, "the
exigencies of the situation [may] make the needs of law
enforcement so compelling that the warrantless search is
objectively reasonable."  <u>Michigan v. Fisher</u>, 130 S.Ct. 546, 548
(2009) (citing <u>Mincey v. Arizona</u>, 437 U.S. 385, 393-394, 98 S.Ct.
2408, 57 L.Ed.2d 290 (1978)).  Under the "emergency aid"
exception, "officers may enter a home without a warrant to render
emergency assistance to an injured occupant or to protect an
occupant from imminent injury."  <u>Kentucky v. King</u>, 131 S.Ct.
1849, 1856 (2011) (citing <u>Brigham City v. Stuart</u>, 547 U.S. 398,
403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); <u>Fisher</u>, 130 S.Ct. at
548)).  This "emergency aid exception" does not depend on the
officers' subjective intent or the seriousness of any crime they

12

are investigating when the emergency arises.  <u>Fisher</u>, 130 S.Ct. at 548 [7] (citing <u>Brigham City</u>, 547 U.S. at 404-05, 126 S.Ct. 1943).[8]  It requires only "an objectively reasonable basis for believing," that "a person within [the house] is in need of immediate aid."  <u>Id.</u> (citing <u>Mincey</u>, 437 U.S. at 392, 98 S.Ct. 2408).

After reviewing the submission of the parties and the relevant case law, we are convinced that this matter is not ripe for summary disposition.  Although there is no evidence and no indication that additional persons were present or threats were occurring inside plaintiff's home, <u>see</u> <u>Kentucky</u>, 131 S.Ct. at 1856 (finding that "emergency aid" exception, requires need to

---

[7]   In <u>Fisher</u>, police officers responding to a report of a disturbance encountered a tumultuous situation in the house and found signs of a recent injury, perhaps from a car accident, outside and could see Fisher screaming and throwing things inside.  130 S.Ct. at 548-49.  The Supreme Court concluded that it was objectively reasonable to believe that Fisher's projectiles might have a human target (perhaps a spouse or a child), or that Fisher would hurt himself in the course of his rage.  <u>Id.</u>

[8]   In <u>Brigham City</u>, police officers responded to a noise complaint in the early hours of the morning and could hear sounds of a fight from inside.  547 U.S., at 406.  The officers saw juveniles drinking beer in the backyard and a fight unfolding in the kitchen.  <u>Id.</u>  They watched through the window as a juvenile broke free from the adults restraining him and punched another adult in the face, who recoiled to the sink, spitting blood.  <u>Id.</u> The Supreme Court found it "plainly reasonable" for the officers to enter the house and quell the violence, for they had "an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning."  <u>Id.</u>

render emergency assistance to an injured occupant or to protect
an occupant from imminent injury); U.S. v. Wolfe, No. 11-1013,
2011 WL 5822154, at *3 (3d Cir. Nov. 18, 2011) (rejecting that
search of home was lawful under exigent circumstances test where
there was no indication that additional victims or threats were
made inside the home), it may have been objectively reasonable
for the responding officers to believe that plaintiff was on the
verge of harming himself.  However, that legal determination is
best made after a jury resolves the remaining disputed issues of
fact.  Plaintiff denies asking anyone for a gun much less
insisting on one,[9] expressing any desire to harm himself, acting
in a belligerent manner toward the officers or others, or being
intoxicated.  Defendants paint a vastly different picture of a
drunken, cursing, defiant man roaming next door twice in a
determined quest for a weapon to harm himself or asking others to
do it.  While the latter facts are not squarely in line with
those cases that would justify an emergency aid exception to the
warrant requirement,[10] we can not also say that a reasonable

_____

[9]  There is no indication that defendant has any reason to
suspect that plaintiff had a gun or access to a gun prior to
their entry into the house.  In fact, the evidence that he sought
one from the Lomonacos is some evidence he did not have one.

[10]  Unlike other cases where qualified immunity was found,
the officers did not hear or see any signs of an altercation
inside the home, there was no indication that anyone but
plaintiff was inside the home and therefore at risk of harm, and
there was no indication that plaintiff himself was injured or had
otherwise acted to harm himself.  While the presence of any one

14

officer would not have been justified in finding and restraining the plaintiff.  Therefore, summary judgment on plaintiff's warrantless search claim will be denied without prejudice.

### b.) Excessive Force

"In an excessive force case, whether there is a constitutional violation is properly analyzed under the Fourth Amendment's objective reasonableness standard." Curley, 499 F.3d at 206 (internal quotation marks omitted) (citing Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  "The relevant inquiry is the reasonableness of the officer's belief as to the appropriate level of force, which should be judged from [the officer's] on-scene perspective, and not in the 20/20 vision of hindsight." Id. (internal quotation marks removed) (citing Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Applying the objective reasonableness standard requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 207

---

of these facts would likely result in a finding of qualified immunity, we are unprepared to say that their absence means that defendants are precluding from showing that under all of the circumstances the risk that plaintiff was about to harm himself was so great that a warrantless entry was justified.

(citing <u>Graham</u>, 490 U.S. at 396).  A "totality of the
circumstances" test is applied which requires a "careful
balancing of the nature and quality of the intrusion on the
individual's Fourth Amendment interests against the
countervailing governmental interests at stake."  <u>Id.</u>; <u>Garrison
v. Porch,</u> 376 Fed.Appx. 274, 277 (3d Cir. 2010) ("In determining
whether or not the force used in effecting an arrest was
unreasonably excessive, a finder of fact is to consider the
totality of the circumstances surrounding the arrest.").  "The
balancing must be conducted in light of the facts that were
available to the officer."  <u>Id.</u> (citing <u>Maryland v. Garrison</u>, 480
U.S. 79, 85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)).

     In evaluating the proper test for objective
reasonableness, the Supreme Court has provided that "[n]ot every
push or shove, even if it may later seem unnecessary in the peace
of a judge's chambers, ... violates the Fourth Amendment."
<u>Graham</u>, 490 U.S. at 396 (citation omitted).  Rather, "[t]he
calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second
judgments — in circumstances that are tense, uncertain, and
rapidly evolving — about the amount of force that is necessary in
a particular situation." <u>Id.</u> at 396-97.

     Defendants state that they had an elevated concern for
plaintiff's safety and wanted to make sure that plaintiff

received the level of mental healthcare that he needed.
Defendants state that plaintiff was taken into custody pursuant
to N.J.S.A. 30:4-27.6 which provides that a law enforcement
officer shall take custody of a person and take the person
immediately and directly to a screening service if on "the basis
of personal observation, the law enforcement officer has
reasonable cause to believe that the person is in need of
involuntary commitment to treatment."  See N.J.S.A. 30:4-27.6(a).
Defendants argue that they are immune from liability under
N.J.S.A. 30:4-27.7 which provides that a "law enforcement
officer, ... acting in good faith..., who takes reasonable steps
to assess, take custody of, detain or transport an individual for
the purposes of mental health assessment or treatment is immune
from civil and criminal liability."  See N.J.S.A. 30:4-27.7.

　　　"A state statute that creates immunity from suit under
state law does not define the scope of immunity from suit under
federal law."  Bates v. Paul Kimball Hosp., 346 Fed.Appx. 883,
885 (3d Cir. 2009) (finding that lower court erred in dismissing
§ 1983 claim on grounds that defendant was immune from suit under
N.J.S.A. 30:4-27.7) (citing Bolden v. SEPTA, 953 F.2d 807, 818
(3d Cir. 1991) (en banc) (citing Howlett v. Rose, 496 U.S. 356,
110 S.Ct. 2430, 110 L.Ed.2d 332 (1990)).  Therefore, the
reasonableness of defendants' actions in taking plaintiff into
custody will be determined under a Fourth Amendment analysis.

Plaintiff states that he attempted to barricade the door to prevent the officers from entering, but that the officers shoved the door open, came into his house, tackled him to the ground, punched him, kneed him in the back, and put him in handcuffs.[11]  Defendants deny that there was much resistance upon entering the house, or that they punched plaintiff.  Upon entering plaintiff's home, Clements observed plaintiff holding something in his hand.  Upon taking "command" of plaintiff's arm, Clements saw that plaintiff was holding a telephone.  There is no evidence that plaintiff was resisting arrest although there is ample evidence that he was intoxicated.

As with the issue of the warrantless entry itself, reasonable minds could differ as to whether defendants used excessive force depending upon which set of facts are accepted.  A jury must resolve the disputed issues of fact by determining whose story to credit.  Once the jury has done so, the Court may then determine whether defendants acted reasonably during the

---

[11]    In reply, defendants argue that plaintiff made contradictory statements regarding the excessive force used by defendants.  Upon review of the testimony, plaintiff's statements are not so contradictory to make his proffered testimony a "sham" and, therefore, differences between plaintiff's version and defendants' version create a material issue of fact that defeats summary judgment.  In addition, the photos taken by plaintiff's father showing bruising on plaintiff's torso and arm, as well as the medical records stating that plaintiff had two broken ribs are not "pure speculation."  Defendants' arguments as to when the photos were taken or when he was treated at the ER go to the weight of the evidence to be decided by the fact finder.

arrest.  This approach will allow the jury to make findings on questions of fact, and then allow the Court to make the ultimate determination of law as to whether Defendant is entitled to qualified immunity.  See Curley v. Klem, 499 F.3d 199, 211, 211 n. 12 (3d Cir. 2007) ("When the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, ... but responsibility for answering that ultimate question remains with the court."); see also id. at 225–26 (dissenting opinion) (internal citations omitted) ("[I]f factual disputes relevant to [the step-two] legal analysis do exist, the court will have to postpone making this determination until the jury resolves all the relevant factual disputes, because determining what actually happened is a prerequisite to determining whether the law clearly established that a particular action was permitted or prohibited by the Fourth Amendment under those circumstances.  After the jury resolves these relevant fact disputes, presumably through the use of special interrogatories, the court is then capable of deciding whether or not the law clearly permitted or prohibited the conduct constituting the constitutional violation.").

Thus, defendant's motion for summary judgment on plaintiff's excessive force claim will be denied.

19

### c.)   False Arrest/False Imprisonment

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989) (citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F.Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 255 N.J.Super. 108, 604 A.2d 657, 680 (Law Div. 1992)).

To state a claim for false arrest, a plaintiff must allege: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975).  "Probable cause ... requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable

doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997). The issue of whether there is probable cause is generally a question for the jury; however, "a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding and may enter summary judgment accordingly." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Defendants state that they acted pursuant to 30:4-27.6 which provides that a law enforcement officer shall take custody of a person and take him immediately and directly to a screening service if on "the basis of personal observation, the law enforcement officer has reasonable cause to believe that the person is in need of involuntary commitment to treatment." See N.J.S.A. 30:4-27.6(a). Here, the determination of probable cause depends upon a determination of reasonable cause. In other words, probable cause may exist if it is shown that defendants

had reasonable cause to believe that plaintiff was in need of involuntary commitment to treatment.  Since there is a dispute of fact concerning the events leading to the warrantless entry arrest which would weigh upon the reasonableness of the defendants' belief that plaintiff needed involuntary screening, the issue of whether probable cause existed shall be submitted to the jury.  See Roth v. Golden Nugget Casino/Hotel, Inc., 576 F.Supp. 262, 268 (D.N.J. 1983) ("When the facts relating to probable cause are in dispute, the issue must be resolved by the jury ....") (quoting Zalewski v. Gallagher, 150 N.J.Super. 360, 368, 375 A.2d 1195 (App.Div. 1977)).

In contrast, the events leading up to the charge against plaintiff for disorderly conduct while at the hospital are not in dispute.  After defendants Clements and Shields left the plaintiff at the hospital, they received a call to return to the emergency room at Virtua West Jersey Hospital because plaintiff was out of control.  The defendants returned to the hospital and found plaintiff in an agitated state and being uncooperative.  He had pulled out his intravenous tube and was bleeding.  Plaintiff admits this behavior and states that he was being uncooperative because he could not afford the cost associated with emergency treatment.

Pursuant to N.J.S.A. 2C:33-2, a person is guilty of disorderly conduct if "with purpose to cause public

22

inconvenience, annoyance or alarm, or recklessly creating a risk
thereof he ... [e]ngages in fighting or threatening, or in
violent or tumultuous behavior; or ... [c]reates a hazardous or
physically dangerous condition by any act which serves no
legitimate purpose of the actor." Plaintiff was disruptive in
the emergency room of the hospital, a place in which it is of
upmost importance to maintain order so that the hospital staff
may properly treat seriously injured patients. Due to his
behavior, the defendant officers were called by the hospital to
return so as to maintain order. Given these circumstances, there
was clear probable cause for the defendant officers to charge
plaintiff with disorderly conduct.

Accordingly, defendants' motion for summary judgment
regarding plaintiffs' Fourth Amendment and corresponding State
constitutional claims is denied with regard to his warrantless
search claim, his excessive force claim, and his false arrest
claim regarding the initial arrest pursuant to N.J.S.A.
30:4-27.6(a). Their motion is granted with respect to
plaintiff's false arrest claim regarding the disorderly conduct
charge.

### 3.   Punitive Damages

Plaintiff argues that he is entitled to punitive
damages based on defendants' conduct in entering his home without
a warrant and using excessive force in arresting him. Defendants

23

move to have plaintiff's request for punitive damages stricken.

Punitive damages are recoverable against the individual officers if their conduct is shown to be "motivated by evil motive or intent," or if it shown to involve "reckless or callous indifference to the federally protected rights of others." See Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983). It is not essential that the defendant's action meet the higher standard of an intentional or evil motive, only that a "defendant's conduct must be, at a minimum, reckless or callous." See Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989). Under the New Jersey standard, "[t]o warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 50 477 A.2d 1224, 1231 (N.J. 1984) (citing DiGiovanni v. Pessel, 55 N.J. 188, 191, 260 A.2d 510 (N.J. 1970)).

Looking at the facts most favorable to plaintiff, a jury could find that the officers entered his home without a warrant and without probable cause and proceeded to use excessive force in arresting him. Although there is no evidence that the officers acted with malice or "evil intent," police officers are presumed to know the law and to know that searches inside a home without probable cause, or arrests using excessive force, violate

24

the Constitution.  See Brewer v. Hayman, No. 06-6294, 2009 WL
2139429, at *8 (D.N.J. July 10, 2009) (finding that law
enforcement officers are presumed to know the law and should know
that suspicion-less strip searches of prison visitors violate the
Constitution so that a jury could award punitive damages).
Depending on whose story the jury credits and its factual
determination, there may be some circumstances here where an
award of punitive damages could be appropriate if the jury finds
for the plaintiff.  See Savarese, 883 F.2d at 1204 n. 14 ("An
award of punitive damages is discretionary with the jury and is
not "required" even if the defendant's conduct is intentional.").

        We determine it best to resolve this issue after the
conclusion of all the evidence rather than pre-trial.  If the
evidence is lacking as to recklessness and malice, defendants may
renew their motion to strike a demand for punitive damages at
that time.  Therefore, defendants' motion for summary judgment
seeking to strike plaintiff's request for punitive damages will
be denied without prejudice.

### C.   Motion to File Sur-Reply

        Plaintiff filed a motion requesting permission to file
a sur-reply.  His request will be denied.  Pursuant to Rule
7.1(d) of the Local Rules of Civil Procedure, only a motion, a
response in opposition, and a reply may be served on counsel and
filed with the Court.  No sur-replies are permitted without

permission of the Judge.  See L.R. 7.1(d)(6).

Plaintiff's motion to file a sur-reply will be denied because: (1) he failed to state the particular reasons why he needed to file a sur-reply; and (2) he failed to include a brief in support of his motion, or a statement that no brief is necessary, pursuant to L.R. 7.1(d)(4).

Plaintiff's entire argument in support of his motion is that he believes that a rebuttal memorandum will aid the Court regarding defendants' "Fourth Amendment defense of exigency/emergency, authority, and qualified immunity." Plaintiff did not explain in particular what statements needed to be addressed in defendants' reply by a sur-reply or why.  See Popovitch & Popovitch, LLC v. Evanston Ins. Co., No. 07-2225, 2009 WL 2568090, at *5 (D.N.J. Aug. 17, 2009) (granting request to file a sur-reply due to plaintiffs' assertion that a new case had been filed and relied upon by defendants); Smithkline Beecham PLC v. Teva Pharmaceuticals USA, Inc., No. 04-0215, 05-0536, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007) (stating that principles regarding reply briefs also apply to sur-reply briefs in that reply briefs should respond to arguments raised in the opposition brief, or explain a position in the initial brief that the respondent refuted).  In addition, plaintiff did not include a brief with his motion in support of filing the sur-reply (or statement that no brief is necessary).  See Smith v. Trusted

<u>Universal Standards In Electronic Transactions, Inc.</u>, No.
09-4567, 2010 WL 1799456, at *2 (D.N.J. May 4, 2010) (granting
motion for leave to file sur-reply where sur-reply brief attached
to the Motion).

      Since plaintiff failed to provide the Court with the
particular reason why he needed to file a sur-reply, his motion
will be denied.

      **IV.**   **<u>CONCLUSION</u>**

      For the foregoing reasons, defendants' motions for
summary judgment will be denied in part and granted in part and
plaintiff's motion for leave to file a sur-reply will be denied.

        <u>  S/Noel L. Hillman    </u>

        NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: March 23, 2012

27